UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LUNATREX, LLC, AIR BUOYANT, LLC, and PETER BITAR, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CASE NO. 1:09-cv-1272-DFH-DML ) |
| MARY A. CAFASSO, MC SQUARED, INC., and LUNATREX, INC., | ) ) ) |
| Defendants. | ) ) |

ENTRY ON PENDING MOTIONS

After unsuccessful efforts to resolve this case, the parties filed competing motions. Plaintiffs LunaTrex, LLC, Air Buoyant, LLC, and Peter Bitar moved for summary judgment on the counterclaim of defendants Mary Cafasso, MC Squared, Inc., and LunaTrex, Inc. for breach of an alleged contract. Defendants, in turn, moved to dismiss seven of the eight counts in the amended complaint under Rules 12(b)(6) and 12(b)(7) of the Federal Rules of Civil Procedure.

As explained below, the court grants plaintiffs' motion for summary judgment on the counterclaim for breach of contract. The court denies defendants' motion to dismiss plaintiffs' Count VIII, which seeks a declaratory judgment on the same claim. The court denies the remainder of defendants' motion to dismiss but converts the motion to a motion for summary judgment on all remaining claims and orders plaintiffs to show cause within 28 days why

summary judgment should not be entered for defendants on all remaining claims in the amended complaint.

I.    *The Breach of Contract Counterclaim*

Because the court focuses first on plaintiffs' motion for summary judgment on the breach of contract counterclaim, the court sets forth facts that are either undisputed or that reflect the record evidence in the light reasonably most favorable to the defendants, the non-moving parties.  See, *e.g*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Fredricksen v. United Parcel Service, Co.*, 581 F.3d 516, 520 (7th Cir. 2009).

The parties to this case were leaders in an effort to compete in the Google Lunar X Prize, a competition that requires the successful contestants to send a mobile robot to the moon to carry out certain tasks on the lunar surface.  As explained in detail in the court's entry granting both sides' motions for preliminary injunctions to block use of the LunaTrex trademark, the parties "LunaTrex" team was an informal joint venture or de facto partnership that eventually fell apart, leading to this litigation.  See *LunaTrex, LLC v. Cafasso*, 674 F. Supp. 2d 1060 (S.D. Ind. 2009).  Although the court's findings and conclusions were preliminary at that time, the parties have not submitted new evidence contradicting those findings and conclusions.

Plaintiff Pete Bitar had originally organized the LunaTrex team in late 2007 and early 2008. He paid many of the out-of-pocket expenses of the new team. Bitar brought some degree of organizational talent and some financing for the team. He had no direct experience in space ventures and no technical expertise in the field. Defendant Mary Cafasso had experience in managing space ventures, such as commercial satellite operations. She brought her technical experience and related talents to the team. See *LunaTrex*, 674 F. Supp. 2d at 1064.

At a meeting in February 2008, Bitar asked Cafasso to commit 30 hours of work per week to the LunaTrex venture. Cafasso agreed to do so, but she also asked that she be paid for her efforts. For purposes of summary judgment, the court assumes that Cafasso performed substantial work on the LunaTrex venture over the next fifteen months, before she and Bitar had a final falling out.

The decisive legal issue on the counterclaim is whether Bitar and Cafasso ever entered into an enforceable contract that obligated Bitar (or perhaps his business, Air Buoyant, LLC) to pay Cafasso for her work on the LunaTrex venture. The undisputed evidence before the court shows that they did not. Bitar and Cafasso talked about a salary for Cafasso, and there are even some e-mail references to an agreement to pay her a salary at some point, and if funding came through. See Pl. Ex. 5 (e-mail chain from May 2009, shortly before the final breakdown).

The evidence shows beyond reasonable dispute that the team members never reached an agreement about their respective ownership shares in the venture and the related issue of salaries for some team members. The team never had money available to pay salaries, and the team fell apart before that situation could change.

Cafasso herself described the negotiations in her testimony at the preliminary injunction hearing. She made clear that Bitar never agreed to pay her hourly rates that she used in her consulting business. Tr. 271. Cafasso said that Bitar said in negotiations in April 2008 that he thought $200,000 would be "a fair salary." Tr. 271-72. She testified that he said "he was willing to pay that as soon as he got funds in," which he hoped would be around June 2008, and that he would pay retroactive to January 2008. Tr. 272.

At that point in the testimony, the court intervened and asked questions about her expectations about the relationship between a salary and an equity interest in the venture. It was clear that the two were inversely related — the higher the salary, the lower the equity interest, and vice versa:

Court:      There's some reference in the e-mails, in essence, to look, this is kind of a trade-off, right; as between equity and salary, and how much risk you've got and how much benefit you've got, right?

Cafasso:    Correct.

Court:      Did you ever reach an agreement about those things?

-4-

Cafasso:     No. [Non-responsive narrative followed.]

Tr. 272-73. Later in the hearing, it became even clearer that Cafasso does not contend the parties ever reached a final agreement on such matters. Cafasso's counsel agreed that the four principal partners in the LunaTrex venture had not necessarily agreed to have equal shares in the venture. Tr. 302.

In closing argument on the preliminary injunction issue, Cafasso's attorney and the court had the following exchange:

Counsel:     I don't think that the fact that there was an agreement to pay Ms. Cafasso makes her an employee. I don't think anybody on the team believed that. There's nothing in the e-mails to indicate that. She just needed to be compensated for her valuable activities.

Court:       Mr. Gangestad [another team member] wasn't? Nobody else was?

Counsel:     We don't know. All we know is that there was an agreement. But all we have evidence of is that there was an agreement between Mary Cafasso and –

Court:       Her testimony was that there was not an agreement, not an agreement on terms. There was an agreement to [agree] at best.[1]

Counsel:     That's a pretty fair characterization of it, Your Honor. But the bottom line is that in one of the e-mails we have him [Bitar] saying, I know I agreed to pay you. Those words come from his mouth.

Court:       Sure. And how much?

_____

[1]The transcript reads "There was an agreement to a degree at best." Tr. 305. The court's actual statement was "There was an agreement to agree at best." The phrase "agreement to a degree at best" does not make sense in the context.

-5-

| Counsel: | It does matter when you leave out the amount, I agree, yeah. |
| Court: | Yes. |

Tr. 305-06.

Even giving Cafasso the benefit of reasonable doubt here, there is at best an agreement by Bitar to pay Cafasso some unspecified amount, that would be tied inversely to the extent of her unspecified equity interest in the venture, at some future time when he raised enough money to pay her. That evidence shows nothing more than an agreement to agree. It does not provide an evidentiary foundation that could allow the court to find an agreement on terms that the court could enforce. An agreement is not enforceable unless it includes all essential terms. See *Mays v. Trump Indiana, Inc.*, 255 F.3d 351, 357 (7th Cir. 2001) (reversing judgment enforcing what had been only an "agreement to agree" that was missing essential terms of plaintiffs' interests in joint venture); *Wolvos v. Myer*, 668 N.E.2d 671, 674-76 (Ind. 1996). Even if we assume that Bitar told Cafasso that $200,000 would be a "fair salary" for her, the failure to come to a definitive agreement that would balance salary and equity means that there was no agreement as to the material terms of the supposed contract. That absence defeats Cafasso's claim.

All members of the LunaTrex team were taking a chance. The venture turned out not to be successful when Bitar and Cafasso had their falling out in

May 2009.  Everyone's efforts, not just Cafasso's, came to naught.  There simply is no evidentiary basis for Cafasso's claim for breach of contract.

In opposing summary judgment, Cafasso has suggested that the plaintiffs' motion was filed too soon, before the parties had conducted discovery.  Rule 56 allows a motion for summary judgment to be filed at any time.  If Cafasso needed discovery to respond to the motion, she needed to invoke what was Rule 56(f) and is now Rule 56(d), which allows for delay if the party shows by affidavit or declaration that the party cannot yet present facts essential to the party's opposition to the motion.  Cafasso did not do so.  Moreover, when the issue is whether the parties' communications added up to a legally enforceable contract, it would be unusual for the party asserting that she had such a contract to need discovery to come up with evidence to establish the very foundation of her entire claim.  Cafasso has not even offered an affidavit on the subject, nor has she tried to explain away her testimony before the court on this topic in the preliminary injunction hearing.

In opposing summary judgment, Cafasso also contends that plaintiffs have not definitively proven that there was *not* a contract.  She suggests that other witnesses might have relevant information.  This is not a sound basis for defeating summary judgment.  Cafasso is the party asserting the claim for breach of contract.  When plaintiffs filed their proper motion for summary judgment on the claim, it was Cafasso's burden to come forward with evidence showing that a

reasonable trier of fact could rule in her favor. She has not done so. Speculation that others might have relevant evidence that would support her claim is not a basis for denying summary judgment. "A party seeking to defeat a motion for summary judgment is required to 'wheel out all its artillery to defeat it.'" *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996), quoting *Employers Ins. of Wausau v. Bodi-Wachs Aviation Ins. Agency*, 846 F. Supp. 677, 685 (N.D. Ill. 1994).

Finally, Cafasso argues that summary judgment is not appropriate because the issue is one of "state of mind." The argument is flawed in two ways. First, and most fundamental, the issue in a contract claim is not an exploration of anyone's subjective state of mind or intent. The issue is whether the parties objectively manifested to one another their agreement on the material terms of the alleged contract. *Woodbridge Place Apartments v. Washington Square Capital, Inc.*, 965 F.2d 1429, 1439-40 (7th Cir. 1992) (applying Indiana law and disregarding evidence of secret intent); *Real Estate Support Services, Inc. v. Nauman*, 644 N.E.2d 907, 910 (Ind. App. 1994) (disregarding evidence of secret intent); *Crabtree v. Lee*, 469 N.E.2d 476, 479 (Ind. App. 1984) (affirming summary judgment: "The intent relevant in contract matters is not some private and secret intent or reservation, but the outward manifestation of intent."). Second, even where subjective state of mind is an issue, a party still needs evidence to defeat summary judgment. Cafasso has not offered any.

Because Cafasso has no evidence of an enforceable agreement to pay her, plaintiffs are entitled to summary judgment on her counterclaim for breach of contract. That decision also means that plaintiffs are entitled to judgment on their Count VIII, a mirror-image claim that seeks a declaratory judgment to the effect that Cafasso had no valid claim for breach of contract. The court will not enter a separate Rule 54(b) final judgment on this lone claim, as plaintiffs request. The contract counterclaim is tied so closely to the facts and circumstances of plaintiffs' own claims that it would not make good sense to split the case into two or more parts for purposes of appeal.

II.     *Defendants' Motion to Dismiss*

Cafasso and the other defendants have moved to dismiss seven of the eight claims in the amended complaint for failure to state a claim or failure to join indispensable parties. The defendants' failure-to-join arguments are non-starters. There is no basis for requiring that any lawsuit between two partners in a joint venture also include as parties all the other partners. The other legal arguments have considerable force, but they are probably best not resolved on a motion to dismiss but on a motion for summary judgment. Defendants' arguments rely heavily on the evidence presented and the findings made in connection with the preliminary injunction issues.

To be more specific, the trademark claims in Counts I and II are difficult to assert against another partner to the informal joint venture, where the court concluded that all partners owned the marks jointly. See *LunaTrex*, 674 F. Supp. 2d at 1072-73. The claim in Count III for breach of a confidentiality agreement does not seem to be based on a coherent contract. *Id.* at 1075.[2] The tortious interference claims in Counts IV and V are difficult to understand when they are asserted against another partner in the wronged venture.

The court also has serious doubts about whether plaintiffs have any claim for non-speculative damages as to Counts IV, V, VI, or VII, given the informality of the entire arrangement, the long odds against success, and the many competing claims for any money that might have been won or raised, including the hoped-for sponsorship from Stihl Corporation.

Accordingly, defendants' motion to dismiss is hereby denied as to Count VIII, denied without prejudice as to Counts I through VII, and converted into a motion for summary judgment as to Counts I through VII, as if the motion were filed today. (The court realizes that defendants did not move to dismiss Count VII, for attempted conversion, but the concern about non-speculative damages applies to that claim, as well.) Plaintiffs are hereby ORDERED TO SHOW CAUSE **no later**

---

[2]Plaintiffs rely on a contract dated September 20, 2008 between MC Squared, Inc., signed by Cafasso as president, and "Air Buoyant LLC ('LunaTrex', or the 'Company')," which was signed by Bitar in an unknown capacity on behalf of "LunaTrex, LLC," an entity that did not yet exist.

**than February 1, 2011** why summary judgment should not be granted to defendants for those stated reasons as to Counts I through VII.  The court will use as the evidentiary record the record compiled for purposes of the preliminary injunction, and any additional evidence that the parties submit.  Defendants may respond to the plaintiffs' submissions no later than 28 days after they are filed, and may submit their own evidence in response.  Defendants need not file a further answer to the amended complaint unless and until the court orders them to do so.

      So ordered.

Date:  January 4, 2011

                                          _____
                                          DAVID F. HAMILTON, CIRCUIT JUDGE*
                                          *sitting by designation

Copies to:

William Calvert Davisson
DAVISSON & DAVISSON, P.C.
owgob@davissonlaw.com

Luke P. Levasseur
MAYER BROWN, LLP
llevasseur@mayerbrown.com

Charles  Novins
THE LAW OFFICES OF CHARLES NOVINS
ocnjlaw@gmail.com

John D. Ritchison
RITCHISON LAW OFFICES
jdritchison@comcast.net